NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES,<br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>KENDALE WILSON,<br>　　　　　　　Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **OPINION**<br><br><br>Cr. No. 15-cr-00521 (WHW) |

**Walls, Senior District Judge**

Defendant Kendale Wilson is charged with possession of a loaded firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and (2). Defendant has filed an omnibus motion seeking various forms of relief, including orders regarding the production of discovery materials, an order requiring the United States to disclose the identity of a confidential informant, and an order suppressing a handgun Defendant claims was unlawfully seized by police officers. Decided without oral argument, Defendant's motion is denied.

### FACTUAL AND PROCEDURAL HISTORY

Except where noted, the following facts are alleged in a Paterson Police Department investigation report attached as an exhibit to Defendant's omnibus motion (the "Jimenez Report"). ECF No. 12 Ex. B; *see also* Def. Omnibus M., ECF No. 12-2 at 11 (incorporating section of Jimenez Report). The Report, prepared by Officer Angel Jimenez of the Paterson Police Department, alleges that, at approximately 6:59 pm on Monday, June 29, 2015, the Paterson Police Department received a report from a confidential informant (the "CI") that "two black males were in possession of a hand gun" and had just robbed a man outside of a liquor

1

NOT FOR PUBLICATION

store in the area of Clinton Street and North 6th Street in Paterson, New Jersey. ECF No. 12 Ex.
B at 1; *see also* United States Mem. Opp. Def. Omnibus M., ECF No. 15 at 1. According to the
CI, one of the suspects was "possible 23yrs of age with a stocky built known as Kendale
Wilson," and the other was "possible a juvenile known as Rondell." ECF No. 12 Ex. B at 1. The
CI also stated that the juvenile suspect was "known to drive a blue 4dr Honda." *Id.* The CI
remained on the phone, providing law enforcement with "up-to-the-minute descriptions of
[Defendant] Wilson's location and appearance," which were in turn provided to Officer Jimenez
as he responded to the call. ECF No. 15 at 1. Officer Jimenez states that he recognized Defendant
Wilson's name from an "Officer Safety alert flier which indicated Mr. Wilson has an active
Traffic Warrant out of this city in the amount of $800." ECF No. 12 Ex. B. at 1.

Upon arriving at the scene, Officer Jimenez allegedly observed "a group of 4 black males
standing near a blue vehicle" on Clinton Street between North 5th Street and North 6th Street. *Id.*
He observed one of the individuals, later identified as Defendant Wilson, "place a black sweater
on top of a city garbage can." *Id.* Upon noticing Officer Jimenez, all four individuals walked
away from him "at a fast pace" down Clinton Street. *Id.* Officer Jimenez remained with the
sweater until two additional police officers, Officers Richard M'Causland and Sebastian Gomez,
arrived. *Id.* Officer Jimenez allegedly "advised them to detain" the four individuals, including
Defendant. *Id.* Officers M'Causland and Gomez ordered the four individuals to stop. ECF No. 15
at 1. At this point, Officer Jimenez picked up the sweater, "felt it contain a heavy weighted
object," and, "upon unraveling the sweater . . . discover a Black Hand gun which appeared to be
loaded." ECF No. 12 Ex. B. at 1. Officer Jimenez then directed Officer Gomez to arrest
Defendant Wilson. ECF No. 15 at 1-2. Officers M'Causland, Gomez, and a third officer, Officer

NOT FOR PUBLICATION

Tabor, patted down the four individuals, placed Defendant Wilson under arrest, and released the other three after conducting field interviews. *Id.* at 1-2.

The handgun was later processed by a Detective Cossari and identified as a Smith and Wesson .40 caliber, Model 411, serial number VAU0045, loaded with six Federal-brand .40 caliber rounds and five CCI-brand .40 caliber rounds. ECF No. 12 Ex. B at 2. Laboratory analysis allegedly confirmed that the sweater contained Defendant Wilson's DNA, as well as the DNA of another, unidentified individual. ECF No. 15 at 2. Law enforcement officers also allegedly located a video posted by Defendant Wilson on the social networking service Twitter several hours before his arrest that "depicted Wilson holding the very same Firearm that was found later that day in his sweater." *Id.*

On October 5, 2015, a grand jury in this District returned an indictment charging Defendant Kendale Wilson with one count of possession of a loaded firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and (2). Indictment, ECF No. 2. The indictment alleges that, before June 29, 2015, Defendant was convicted of a crime punishable by imprisonment for a term exceeding one year in the Superior Court of New Jersey, Passaic County. *Id.* at 1. The indictment also alleges that, on or about June 29, 2015, Defendant allegedly knowingly possessed, "in and affecting interstate commerce," a loaded Smith and Wesson .40 caliber pistol, Model 411, bearing serial number VAU0045. *Id.* Upon Wilson's conviction for the firearm offense, the indictment also seeks forfeiture of the firearm and eleven rounds of ammunition. *Id.* at 2.

Defendant Wilson was arraigned in this Court on November 18, 2015 and pleaded not guilty to the one count of the indictment. Minute Entry for Proceedings of November 18, 2015, ECF No. 5. That same day, the Court issued an order for discovery and inspection. ECF No. 6.

NOT FOR PUBLICATION

Among other things, the discovery order imposes on the United States a "continuing duty" to produce materials to which defendant is entitled under Fed. R. Civ. P 16, *id*. ¶¶ 1(a)-(e), 5, and *Brady v. Maryland*, 373 U.S. 83 (1963), *id*. ¶¶ 1(f), 5; requires the United States to provide notice of all evidence it intends to offer of other crimes, wrongs or acts under Federal Rule of Evidence 404(b) at least ten days before the beginning of trial, *id*. ¶ 3; and requires the United States to produce all statements within the meaning of the Jencks Act, 18 U.S.C. § 3500, and impeachment evidence within the meaning of *Giglio v. United States*, 405 U.S. 150 (1972), "sufficiently in advance of the witness's testimony to avoid delay in the trial." *Id*. ¶ 4.

On May 30, 2015, Defendant Wilson filed an omnibus motion with this Court. Def. Omnibus M., ECF Nos. 12, 12-1, 12-2. Defendant seeks an order suppressing the firearm as evidence of his alleged offense under the Fourth Amendment. ECF No. 12 at 1-2. Defendant also seeks several discovery-related related orders: (1) requiring the United States to disclose the identity of the CI who first reported Defendant to the Paterson Police; (2) compelling the United States to disclose any and all exculpatory and/or favorable information, under Fed. R. Crim. P. 16 and *Brady v. Maryland*, 373 U.S. 83 (1963); (3) compelling the United States disclose their intention to introduce any evidence governed by Federal Rule of Evidence 404(b) and permitting a pretrial hearing regarding any such evidence; (4) compelling early disclosure of Jencks Act material under 18 U.S.C. § 3500; and (5) granting several additional, specific requests for factual discovery. *Id*. The United States filed a motion in opposition on June 17, 2016. ECF No. 15.

NOT FOR PUBLICATION

## DISCUSSION

### I.      Defendant's motion to suppress the seized firearm

Defendant Wilson moves to suppress from evidence the firearm seized by Officer Jimenez from the garbage can at the scene of his arrest, arguing that the gun was seized in violation of his Fourth Amendment rights. ECF No. 12-2 at 5-12. The Court disagrees.

### A.  Applicable law

A criminal defendant brings motions to suppress evidence under Federal Rule of Criminal Procedure 12(b)(3)(C). Generally speaking, evidence obtained in violation of an individual's rights under the Fourth Amendment to the United States Constitution may be suppressed under the "exclusionary rule." *United States v. Leon*, 468 U.S. 897, 906 (1984). The Fourth Amendment guarantees the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. Law enforcement officers generally must obtain a warrant before searching or seizing a person or his property for the search or seizure to be considered "reasonable." *United States v. Herrold*, 962 F.2d 1131, 1137 (3d Cir. 1992).

"The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978). A defendant must establish his standing to challenge a search or seizure by showing both a "reasonable expectation of privacy" in the property searched or seized and his own "subjective expectation of privacy in the property." *United States v. Correa*, 653 F.3d 187, 190 (3d Cir. 2011) (citing *United States v. Kennedy*, 638 F.3d 159, 163 (3d Cir. 2011)). Although a person generally has a protected privacy interest in his own property, "he forfeits that

NOT FOR PUBLICATION

interest when he abandons his property." *United States v. Fulani*, 368 F.3d 351, 353 (3d Cir. 2004) (citing *Abel v. United States*, 362 U.S. 217, 240 (1960)).

If a defendant demonstrates that he had a valid privacy interest in property and that the search or seizure of that property occurred without a warrant, the government bears the burden of showing that the search or seizure fit within one of the established exceptions to the general warrant requirement or that a warrant was otherwise not required. *Herrold*, 962 F.2d at 1137. If the government fails to do so, evidence resulting from the search or seizure may be suppressed under the exclusionary rule. *Leon*, 468 U.S. at 906.

"A motion to suppress requires an evidentiary hearing only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome." *United States v. Hines*, 628 F.3d 101, 108 (3d Cir. 2010).

**B. Analysis**

The United States does not dispute that it seized the firearm in this case without a warrant. The United States claims that the warrantless seizure was justified because Defendant forfeited any property rights he had in the gun when he abandoned it by leaving it on the garbage can. ECF No. 15 at 9-10. Defendant argues that the firearm must be suppressed because any abandonment was the involuntary result of his own unlawful seizure by the police. ECF No. 12-2 at 5-12.

"Abandonment," for purposes of the Fourth Amendment, "examines the individual's reasonable expectation of privacy" in an item. *Fulani*, 368 F.3d at 353. The court must "determine from an objective viewpoint whether property has been abandoned," and "[p]roof of intent to abandon property must be established by clear and unequivocal evidence." *Id.* (citing

6

NOT FOR PUBLICATION

*United States v. Moody*, 485 F.2d 531, 534 (3d Cir. 1973)). Abandonment, however, "may be involuntary, and thus invalid, when it results directly from police misconduct, such as an illegal search or seizure, deceit, or, perhaps, a pattern of harassment." *Id.* (citing *United States v. Lewis*, 921 F.2d 1294, 1303 (D.C. Cir. 1990)); *see also United States v. Coggins*, 986 F.2d 651, 653 (3d Cir. 1993) ("[W]hen abandonment of property is precipitated by an unlawful seizure, that property also must be excluded.") (citation omitted).

A seizure occurs, for purposes of the Fourth Amendment, "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen," *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968), and when, "in view of all circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). A seizure does *not* occur in the absence of either "physical force . . . *or*, when that is absent, *submission* to the assertion of authority." *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (emphasis in original; explaining, as example, that the word "seizure" "does not remotely apply . . . to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure."). For the warrantless seizure of a person in a temporary investigative stop to be lawful, officers must have "reasonable suspicion," defined as a "particularized and objective basis for suspecting the person stopped of criminal activity." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

Even if a defendant is unlawfully stopped, Courts have refused to suppress evidence that a defendant abandons *before* he is seized. In *Hodari D.*, the Supreme Court rejected a motion to suppress evidence where the defendant had abandoned a rock of crack cocaine while fleeing from police officers, before he was eventually caught. 499 U.S. at 629. The Court held that,

NOT FOR PUBLICATION

because the defendant had not yet been "seized" when he discarded the cocaine, the cocaine was "not the fruit of a seizure, and his motion to exclude evidence of it was properly denied." *Id*. "Since *Hodari D.*, courts have routinely held that evidence abandoned during flight from an earlier encounter with the police that did not constitute a seizure is inadmissible." *United States v. Dupree*, 617 F.3d 724, 737 (3d Cir. 2010) (citing cases); *see also United States v. Thomas*, 423 Fed App'x 199, 203-04 (3d Cir. 2011) ("because [defendant] dropped the duffel bag and walked away from it before he was stopped by the detectives, he is foreclosed from arguing that the abandonment was 'precipitated by an unlawful seizure,' thus mandating its exclusion") (citing *Coggins*, 986 F.2d at 653).

The factual record in this case demonstrates both that Defendant Wilson abandoned the gun and that he was not yet seized when he did so. According to the section of the Jimenez Report incorporated directly into Defendant's brief, *see* ECF No. 12 at 11, Officer Jimenez first observed Defendant and three other individuals standing on the corner of Clinton Street between North 5th Street and North 6th Street. *Id*.; see also ECF No. 12 Ex. B at 1. Officer Jimenez observed Defendant "place a black sweater on top of a city garbage can," *id*., before all four individuals "proceeded to walk away from him at a fast pace." *Id*. Defendant exhibited his clear intent to abandon the sweater (and the gun inside it) by placing it on top of a public garbage can and walking away. *See*, e.g., *Hodari D.*, 499 U.S. at 629 (defendant abandoned crack cocaine when he "tossed away" the drugs while running from police); *Thomas*, 423 Fed App'x at 203-04 (defendant abandoned duffel bag when he "dropped the duffel bag in a grassy area . . . then walked away," because "[a]ny individual in the area would have had access to the duffel bag").

The abandonment was not involuntary because, like the defendants in *Hodari D.* and *Thomas*, Defendant Wilson had not yet been seized when he abandoned the sweater and gun.

8

NOT FOR PUBLICATION

There is no indication, and Defendant does not allege, that Officer Jimenez used physical force on Defendant or that he asserted his authority over Defendant before Defendant walked away. Even assuming, for the sake of argument, that Officer Jimenez asserted his authority simply by being present at the scene, this did not result in Defendant's submission to authority. *See Hodari D.*, 499 U.S. at 626 (a "fleeing form that continues to flee" has not been seized).

Defendant Wilson raises no "issues of material fact that will affect the outcome" of his motion and does not present a "colorable constitutional claim" for the suppression of the firearm, *Hines*, 628 F.3d at 108, so an evidentiary hearing is unnecessary. Because Defendant willingly abandoned the gun before he was seized by police officers, he forfeited his privacy interest in the gun and may not challenge its introduction as evidence under the Fourth Amendment. *Fulani*, 368 F.3d at 353.[1]

## II.   Defendant's discovery requests

Defendant Wilson also moves for relief in several discovery-related matters.

---

[1] Because the gun was seized before Defendant Wilson was stopped, the Court need not address Defendant's claim that the officers lacked "reasonable suspicion" to stop him. *See* ECF No. 12 at 10. In any event, it is well-established that a law enforcement officer need only a "particularized and objective basis for suspecting the person stopped of criminal activity." *Ornelas*, 517 U.S. at 696. It is also well-established that a court may look to several factors in assessing the reliability of an informant's tip, including whether "the information would not be available to the ordinary observer" and whether "the informant has recently witnessed the criminal activity at issue." *United States v. Johnson*, 592 F.3d 442, 449 (3d Cir. 2010). Here it is undisputed, for the purposes of this motion, that the CI informed the Paterson Police, in real time, that a stocky black male and another black male who drove a blue, four-door Honda were in possession of a firearm outside of a liquor store in the area of Clinton Street and North 6th Street in Paterson, New Jersey. ECF No. 12 Ex. B at 1. It is also undisputed, for the purposes of this motion, that Officer Jimenez observed four black males standing near a blue vehicle in that same location, and that Defendant Wilson placed the sweater on a garbage can before walking away. *Id.* The United States also alleges that the CI was "known" to the Paterson Police Department as a reliable informant, accurately described Defendant Wilson's clothing, and suggested that Defendant may have placed the gun in either the vehicle or the garbage can because he was walking back and forth between the two. *See* ECF No. 15 at 7.

NOT FOR PUBLICATION

### A. Disclosure of the identity of the confidential informant

First, Defendant Wilson seeks an order compelling the United States to disclose the identity of the CI who called the Paterson Police and provided the information that ultimately led to his arrest on June 29, 2015. ECF No. 12-1 at 10-13.

#### 1. Applicable Law

The Supreme Court held in *Roviaro v. United States* that the government has a qualified "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." 353 U.S. 53, 59 (1957). This privilege, which "recognizes the obligations of citizens to communicate their full knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation," *id.*, is not absolute. Instead, "[w]here the disclosure of the informer's identity or the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination a cause, the privilege must give way." *Id.* at 60-61. To determine whether fairness requires disclosure of an informant's identity, courts must balance the "public interest in the flow of information against the individual's right to prepare his defense." *Id.* at 62.

Although "there is no fixed rule as to when disclosure is required," *United States v. Jiles*, 658 F.2d 194, 196 (3d Cir. 1981) (citing *McCray v. Illinois*, 386 U.S. 300 (1967)), the individual seeking disclosure of an informant's identity has the initial burden to show the need for disclosure. *Id.* If the defendant demonstrates a need for disclosure, the court must then weigh this need against the prosecution's interest in maintaining the confidentiality of its informant. *Id.* at 198.

NOT FOR PUBLICATION

The Third Circuit has recognized that "one of three types of cases may emerge" when applying this balancing test: (1) "extreme" situations where the informant "played an active and crucial role in the events underlying the defendant's potential criminal liability," increasing the need for disclosure of the informant's identity; (2) "cases in which the informant was not an active participant or eyewitness, but rather a mere tipster," where disclosure is generally not warranted; and (3) cases falling in between these two extremes. *Id*. at 196-97. An informant who witnessed, but did not participate in, the unlawful activity falls within the third category, where "balancing becomes most difficult." *Id*.

### 2. Analysis

Defendant Wilson, who bears the initial burden of demonstrating a need for disclosure, argues that the United States should be ordered to provide the CI's identity for three reasons: first, because "[i]t appears that the informant may have assisted in the criminal occurrence," ECF No. 12-1 at 12; second, because "the information provided by the informant was the only evidence that Mr. Wilson possessed a firearm," *id*.; and third, because the CI's "intimate and detailed knowledge" of the incident is relevant to the preparation of Defendant's defense. *Id*.

None of these reasons demonstrates a valid need for disclosure. First, although Defendant Wilson alleges that the CI "may have assisted in the criminal occurrence" – an assertion that, if true, would place the CI in the first, "extreme" category of informants, *Jiles*, 658 F.2d at 196-97 – Defendant points to nothing in the factual record to support this speculation. A defendant's mere speculation that the CI "played an active and crucial role" in the events surrounding his possession of a firearm does not demonstrate a need for disclosure. *Id*.; *see also United States v. Robles*, 814 F. Supp. 1233, 1240 (E.D. Pa. 1993) (rejecting defendant's assertion that disclosure was warranted because "informant may have been an active participant" in the alleged offense

11

NOT FOR PUBLICATION

because there was "no evidence that the confidential informant participated with the defendants" in the offense, and because defendant did not "indicate some concrete circumstances that might justify overcoming" the government's interest in keeping the informant anonymous) (quoting *United States v. Estrella*, 567 F.2d 1151, 1153 (1st Cir. 1977)).

The Court instead finds, based on the information in the Jimenez Report, that the CI was likely an eyewitness to Defendant's alleged firearm possession and belongs to the third, "in-between" category of informants. *See* ECF No. 12 Ex. B.[2] The CI provided information that led Defendant Jimenez to discover evidence of Defendant's alleged offense. "Where an informant's role was in validating a search, disclosure of his identity is not required." *United States v. Bazzano*, 712 F.2d 826, 839 (3d Cir. 1983) (citing *McCray*, 386 U.S. 300).

Defendant Wilson is also incorrect that the CI's information is the only evidence that he possessed a firearm. The "materiality of [an informant's testimony] must be determined by reference to the offense charged . . . and the evidence relating to that count." *Roviaro*, 353 U.S. at 63. Here, the United States claims that it will submit several additional items of evidence establishing that Defendant possessed the firearm. Notably, as discussed, Officer Jimenez allegedly saw Defendant abandon a sweater on a garbage can, then unwrapped the sweater and found a loaded Smith and Wesson .40 caliber handgun. ECF No. 12 Ex. B at 1. Additionally, despite Defendant's assertion that "no forensic evidence has been provided" to corroborate the charge, ECF No. 12-1 at 12, the United States claims that testing of the sweater wrapped around the firearm revealed Defendant's DNA. ECF No. 15 at 9. The United States also alleges that Defendant Wilson uploaded a video to his Twitter account several hours before his arrest that

---

[2] There is no indication, however, that the CI was an eyewitness to Defendant Wilson's abandonment of the firearm, his stop, or his arrest.

12

NOT FOR PUBLICATION

depicted him displaying the same firearm seized by Officer Jimenez, and that he tweeted[3] before

his arrest "[a]nd I got a 40 [emoticon of a handgun] my 40 ah [expletive deleted] ya [emoticon of

a handgun and an explosion]." *Id.* at 2, 9. In light of this additional evidence, the Court finds that

the materiality of the information provided by the CI does not warrant disclosure of the CI's

identity. *Cf. Roviaro*, 353 U.S. at 629-30 (Disclosure of informant's identity needed in part

because informant "was the sole participant, other than the accused, in the transaction charged"

and "was the only witness in a position to amplify or contradict the testimony of government

witnesses").

Finally, Defendant argues that, because the CI's "intimate and detailed knowledge" of the

event is "highly relevant and of vital importance" to the preparation of his defense, Defendant

must be allowed to interview the CI before his trial and potentially call him as a witness for the

defense. ECF No. 12-1 at 12. The Third Circuit rejected nearly the exact same argument in *Jiles*,

holding that the "mere speculation that an eyewitness may have some evidence helpful to

defendant's case is not sufficient to show the specific need required by *Roviaro*." *Jiles*, 658 F.2d

at 197 (citations omitted). Defendant has provided nothing more than speculation that disclosure

of the CI's identity will be relevant or helpful to his defense. This is not enough to establish a

need for disclosure, nor is it enough to outweigh the United States' interest in maintaining the

CI's confidentiality. Defendant's motion is denied.

### B.  Disclosure of exculpatory and/or favorable information

Defendant Wilson seeks disclosure of all material evidence favorable to the defense, as

required by *Brady v. Maryland*, 373 U.S. 83 (1963). ECF No. 12-1 at 14-17. The United States

already has a "continuing" duty to produce all *Brady* material under the Court's November 18,

---

[3] A "tweet" is a text, image, or video posting on Twitter.

NOT FOR PUBLICATION

2015 discovery order, *see* ECF No. 6 ¶¶ 1, 5, and the Court has received no indication that the United States has failed or will fail to comply with its obligation. The Court denies Defendant's request as premature.

Defendant also specifically seeks disclosure of all material that may impeach or otherwise alter the jury's credibility of a prosecution witness, as required by *Giglio v. United States*, 405 U.S. 150 (1972). ECF No. 12 -1 at 16-17. Again, the Court's discovery order already requires the United States to produce all "impeachment evidence within the meaning of *Giglio v. United States*, 405 U.S. 150 (1972), sufficiently in advance of the witness's testimony to avoid delay in the trial." ECF No. 6 ¶ 4. Because the Court has received no indication that the United States has failed or will fail to comply with its *Giglio* obligation under the discovery order, and because the Third Circuit has limited the discretion of district courts to order early production of *Giglio* material, *see United States v. Higgs*, 713 F.2d 39, 45 (3d Cir. 1983), the Court will not disturb its existing discovery order.[4]

### C. Rule 404(b) evidence

Defendant seeks an order requiring the United States to provide pre-trial disclosure of any evidence relating to other crimes, wrongs, or acts committed by Defendant, as governed by Federal Rule of Evidence 404(b), so that Defendant may examine the evidence and seek an *in limine* ruling as to its admissibility. ECF No. 12-1 at 19-22.

Again, this Court's November 18, 2015 discovery order already requires the United States to "provide notice to the defense of all evidence it intends to offer of other crimes, wrongs

---

[4] To the extent Defendant seeks, and will continue to seek, the production of materials regarding *any* government agent involved in the investigation, *see* ECF No. 12-1 at 17-18, the United States is correct that its *Giglio* obligations extend only to witnesses who will testify at trial. ECF No. 15 at 11; *see Buehl v. Vaughn*, 166 F.3d 163, 181 (3d Cir. 1999).

NOT FOR PUBLICATION

or acts within the meaning of Rule 404(b) of the Federal Rules of Evidence, not less than ten
(10) calendar days prior to the date of trial, except that for good cause shown, the Court may
excuse such pretrial notice." ECF No. 6 ¶ 3. Defendant provides no indication that the United
States will not comply with this order, nor does he argue that the ten-day notice period required
by the order is insufficient. The Court denies this request as premature.

### D.  Early disclosure of Jencks Act material

Defendant Wilson seeks an order requiring the United States to provide him with
statements or reports made by government witnesses, as required by the Jencks Act, 18 U.S.C. §
3500, before the beginning of trial. Defendant also seeks an order requiring the United States to
retain all "rough notes and reports" kept by FBI agents in this matter.[5] ECF No. 12-1 at 23-24.

The Jencks Act provides, in part, that, "[i]n any criminal prosecution brought by the
United States, no statement or report in the possession of the United States which was made by a
Government witness or prospective Government witness (other than the defendant) shall be the
subject of subpoena, discovery, or inspection until said witness has testified on direct
examination in the trial of the case." 18 U.S.C. § 3500(a). Although Defendant Wilson states,
without support, that "the Court may order the government to divulge this discovery pre-trial,"
ECF No. 12-1 at 23, the Third Circuit has held that "[t]he blunt command of the [Jencks Act]
together with the unequivocal legislative history has led to unbroken precedent in the Courts of
Appeals denying to district courts the power to compel production of the statements of
government witnesses until the conclusion of the direct examination at trial." *United States v.*

---

[5] Defendant Wilson also seeks an order requiring the preservation of government agent notes and
draft reports in reference to the United States' obligations under *Giglio*, 405 U.S. 150. *See* ECF
No. 12-1 at 17-18.

NOT FOR PUBLICATION

*Murphy*, 569 F.2d 771, 773 (3d Cir. 1978). The Court lacks the authority to grant Defendant Wilson the early Jencks Act discovery he seeks.

In any event, the Court's November 18, 2015 discovery order requires the United States to "produce all statements within the meaning of the Jencks Act . . . sufficiently in advance of the witness's testimony to avoid delay in the trial," ECF No. 6 ¶ 4, and the United States has pledged to produce all Jencks Act material three days before the testimony of each government witness. ECF No. 15 at 13. Again, the Court will not disturb its existing discovery order.

With respect to the "rough notes and reports" of agents in this matter, the Third Circuit has held that "the government must retain and, upon motion, make available to the district court both the rough notes and the drafts of reports of its agents to facilitate the district court's determination whether they should be produced." *United States v. Ammar*, 714 F.2d 238, 259 (3d Cir. 1983). To repeat, the Court lacks the authority to order the United States to produce any witness's rough notes before the conclusion of that witness's direct examination, but the United States is required to comply with its existing duties under the Jencks Act and the Court's discovery order and retain all rough notes and draft reports of its agents.

### E. Other discovery requests

Defendant makes several additional, specific discovery requests, several of which are duplicative of his earlier requests. ECF No. 12-2 at 1-5; ECF No. 12 Ex. C. In a list attached to his omnibus motion, Defendant seeks production of:

1. Fingerprint Examination with lab notes.
2. CCH of all arrestees.
3. CAD reports of Paterson Police Department for the incident.
4. Full surveillance footage of scene.
5. Names and addresses of other individuals detained by Paterson Police on the date and time in question referred to in incident report.
6. CCH of the complainant or "confidential informer."

16

NOT FOR PUBLICATION

ECF No. 12 Ex. C

### 1. Fingerprint examination and other laboratory notes

Under Fed. R. Civ. P. 16, Defendant seeks the "preliminary notations, calculations, and drafts of reports concerning scientific tests and experiments," ECF No. 12-2 at 2, including "any ballistics or DNA experts," *id*. at 3, and Defendant's "Fingerprint Examination with lab notes," ECF No. 12 Ex. C.

Defendant is correct that, under Rule 16, the United States "must permit a defendant to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment" that the United States possesses and that is either material to the defense or that the United States plans to use in its case-in-chief. Fed. R. Crim. P. 16(a)(1)(F). Under the Court's November 18, 2015 discovery order, the United States already has a "continuing" duty to provide Defendant with "[a]ll reports of examinations and tests required to be produced under Rule 16(a)(1)(F)." ECF No. 6 ¶¶ 1(d), 5. The United States does not object to this duty and has, in fact, provided the results of Defendant's fingerprint comparison report as Exhibit 1 to its opposition brief. ECF No. 15 Ex. 1. This moots Defendant's request for production of the fingerprint report itself.

Defendant also claims that, because the "preliminary notations, calculations, and drafts" of scientific reports are "necessary for the proper analysis of the results of such tests and experiments" and would aid him in his defense, they are discoverable under Rule 16 and *Brady*, 373 U.S. 83. The Court disagrees. Although the Third Circuit does not appear to have ruled on this matter, other Courts of Appeals have held that disclosure of "log notes, protocols, and other internal documents" relating to government scientific analysis is not required under Rule 16. *United States v. Iglesias*, 881 F.2d 1519, 1521-23 (9th Cir. 1989) ("While we certainly respect

17

NOT FOR PUBLICATION

defendants' rights to inspect and copy the actual results or reports of scientific tests, were are not willing to force the government to disclose every single piece of paper that is generated internally in conjunction with such tests"), *cert. denied*, 493 U.S. 1088 (1990); *see also United States v. Price*, 75 F.3d 1440, 1444 (10th Cir. 1996) (noting that the language of Fed. R. Crim. P. 16(a)(1)(D), the predecessor to Fed. R. Crim. P. 16(a)(1)(F), is "clear on its face. It requires the prosecution to turn over 'results or reports' of scientific tests," but does not require "additional discovery relating to laboratory processes"). This Court agrees with the reasoning of the Ninth and Tenth Circuits and also observes that Fed. R. Crim. P. (a)(1)(F) is an exception to Fed. R. Crim. P. 16(a)(2)'s general provision that Rule 16 "does not authorize the discovery or inspect of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."

The United States has already provided Defendant with a copy of the fingerprint examination report. Because no provision of Rule 16 specifically authorizes Defendant to receive the United States' "preliminary notations, calculations, and drafts," the production of these "internal government documents" is not authorized under Fed. R. Crim. P. 16(a)(2). Defendant's request is denied as moot with respect to the fingerprint examination report and future scientific reports or results and denied with respect to notations, calculations, and drafts.

### 2. The CCH, names, and addresses of all arrestees and persons detained by Paterson Police.

Defendant Wilson seeks production of the computerized criminal histories ("CCH"), names, and addresses of all persons detained by the Paterson Police Department on June 29, 2015, arguing that he is entitled to the names and statements of all witnesses before trial, as well

18

NOT FOR PUBLICATION

as the statements of people who will not be called as witnesses. ECF No. 12-2 at 4-5. Defendant

is incorrect in both respects.

Defendant first claims that the United States "should be required to disclose the names

and addresses of all witnesses [it] will call at trial." *Id.* at 4 (citing *United States v. Cannone*, 528

F.2d 296, 299 (2d Cir. 1975); *United States v. Harris*, 542 F.2d 1283, 1291 (7th Cir. 1976)). The

Court disagrees. Although district courts may have the "authority to compel pretrial disclosure of

government witnesses" if they choose to do so, *Cannone*, 528 F.2d at 300-01 (finding that, given

factual circumstances, district court abused its discretion in compelling disclosure), a defendant

is not "entitled to obtain a list of the government's witnesses through discovery." *United States v.*

*Beech*, 307 F.R.D. 437, 442 (W.D. Pa. 2015) (citing *United States v. DiPasquale*, 740 F.2d 1282,

1294 (3d Cir. 1984), *cert. denied*, 469 U.S. 1228 (1985)). Other than speculating that some

witnesses may have exculpatory *Brady* information – which the United States is already required

to disclose – Defendant gives no reason why he should receive a list of witnesses here. ECF No.

12-2 at 3-4.

Relatedly, Defendant argues that the United States should be required to produce the

"[s]tatements of all witnesses" before trial, including the statements of "people who will not be

called" as witnesses. ECF No. 12-2 at 4-5 (citing *Davis v. United States*, 413 F.2d 1226, 1231

(5th Cir. 1969); *United States v. Sopher*, 362 F.2d 523, 525-26 (7th Cir. 1966); Fed. R. Crim. P.

16(a)(1)(C)). Again, the Court disagrees. As an initial matter, Rule 16(a)(1)(C) does not apply in

this case because Defendant is a natural person, not an organization. Fed. R. Crim. P.

16(a)(1)(C). As already discussed, the Jencks Act bars the Court from requiring the production of

statements or reports made by government witnesses until after the witnesses have completed

direct examination. 18 U.S.C. § 3500(a). More generally, there is no "authority to support a

19

NOT FOR PUBLICATION

defendant's request for the specifics of each government witness' proposed testimony." *Beech*, 307 F.R.D. at 442 (citing *United States v. Fioravanti*, 412 F.2d 407, 411 (3d Cir. 1969) ("[W]e do not believe that Rule 16 requires the prosecution to disclose all the minutia of its evidence, to reveal its trial strategy, and to delineate with total specificity the case it intends to present."))[6]

The Court repeats that the discovery order of November 18, 2015 requires the United States to timely fulfill its disclosure obligations under *Brady*, *Giglio*, the Jencks Act, Federal Rule of Evidence 404(b), and Federal Rule of Criminal Procedure 16. ECF No. 6. There is no indication that the United States has not complied or will not comply with the discovery order with respect to witness information falling within any of those disclosure obligations, so the Court sees no need to grant further relief.

### 3. The CAD reports of the Paterson Police Department.

The United States states that it has already provided the CAD report for Defendant Wilson's arrest, ECF No. 15 at 16, so this request is denied as moot.

### 4. Full surveillance footage of the scene.

The United States does not directly address Defendant's request for "surveillance footage of scene." ECF No. 12 Ex. C. The Court repeats that, "[i]n a criminal trial, the government is subject to three sets of disclosure obligations: those imposed under the Jencks Act . . . those imposed by Fed. R. Crim. P. 16 . . . and those imposed by the Supreme Court's holding in *Brady* . . . ." *United States v. Maury*, 695. F.3d 227, 247 (3d Cir. 2012). Defendant does not explain

---

[6] A defendant may of course seek pre-trial production of a witness statement because it falls within *another* category of evidence to which he is entitled. *See*, e.g., *Davis*, 413 F.2d at 1231 (defendant entitled to receive tape recording of telephone call between himself and government informant, not because the tape contained statements of the informant, but because the tape contained a confession of the defendant to which he was entitled under previous version of Fed. R. Civ. P. 16(a)(1)). Defendant makes no such argument about any potential witness statements here.

20

NOT FOR PUBLICATION

why surveillance footage of the scene of his arrest – if it exists – would be discoverable under any of those three provisions. To the extent surveillance footage exists and is discoverable under any of those obligations, the United States is already required to produce it under the terms of the November 18, 2015 discovery order. ECF No. 6. No further relief is warranted.

### 5.  The CCH of the CI

For the reasons already discussed, Defendant Wilson is not entitled to information regarding the identity of the CI.

### CONCLUSION

Defendant Wilson's motion to suppress the firearm seized on June 29, 2015 is denied. Defendant's request to compel disclosure of the identity of the confidential informant is denied. Defendant's requests for his fingerprint report and the relevant CAD reports of the Paterson Police Department are denied as moot because the documents have already been produced. Defendant's remaining discovery requests are addressed by the Court's November 18, 2015 discovery order and are denied as moot. To the extent Defendant seeks relief outside the scope of the discovery order, Defendant's requests are denied. An appropriate order follows.

DATE: 6 July 2016

William H. Walls
Senior United States District Court Judge